Filed 8/11/25  Horvath v. Brady CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAGMAR HORVATH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MANDY J. BRADY,<br><br>    Defendant and Respondent. | H051571, H051574<br>(Santa Clara County<br>Super. Ct. No. 22CV408499) |

Defendant Mandy J. Brady recorded a notice of levy and writ of execution against real property titled in the judgment debtor's name.  In response, plaintiff Dr. Dagmar Horvath sued Brady for slander of title, cancellation of instruments and declaratory relief.  Horvath alleged the judgment debtor had quitclaimed the property to her in 2019 by a deed that was not recorded until 2023, after the inception of Horvath's lawsuit.  Horvath appeals the orders granting Brady's special motion to strike under Code of Civil Procedure section 425.16 (case No. H051574), and denying Horvath's application for a preliminary injunction enjoining a sheriff's sale of the property (case No. H051571).  We have consolidated the two appeals for purposes of briefing, oral argument and disposition.  For the reasons explained here, we will affirm both orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

We derive the following factual summary from the complaint and the parties' supporting declarations and documents.  Brady was awarded $586,427 in attorney fees

against Cyrus Hazari in 2021.[1] Brady confirmed Hazari held title to real property on Felter Road in San Jose, obtained a writ of execution in November 2022, and commenced to levy the writ against the property.

Documents show Hazari and Horvath purchased the Felter Road property together in 1998, and Horvath transferred her interest to Hazari in 2000. According to a June 2015 agreement between Hazari and Horvath, Hazari was unable to make an April 2015 balloon payment on the mortgage. In order to prevent foreclosure, Hazari agreed to sell his personal residence and use the proceeds to pay off part of the balloon payment. Horvath agreed to allow Hazari to live in her guesthouse, work in her office and add him to her business health insurance plan. The 2015 agreement does not specify the amount of Hazari's debt to Horvath, but characterizes it as a "second mortgage" secured by the property and provides that Horvath and Hazari would execute a new mortgage note with an updated accounting of Hazari's debt, including any of Horvath's future payments to Hazari. In return, Hazari agreed among other things to quitclaim the property to Horvath if he was unable to repay the loan and cover the property's carrying costs within five years.

In July 2019, Horvath and Hazari executed a note secured by a deed of trust in which Hazari acknowledged owing Horvath approximately $1,650,000. He agreed to pay principal and interest on that amount either upon sale of the property, or fifteen years from January 2019, whichever was earlier. Despite a fifteen-year repayment term of the July 2019 agreement, Horvath alleges Hazari quitclaimed the property to her in November 2019 because he could no longer pay for the property or its maintenance. Horvath recorded the quitclaim deed in June 2023, after she filed this action.

---

[1] Brady also obtained an order in *Hazari v. Brady* (Super. Ct. Santa Clara County, No. 16CV295730 (*Hazari*) declaring Hazari a Vexatious Litigant. Brady maintains Horvath commenced this action as a proxy for Hazari because of his vexatious litigant status.

After Brady recorded the notice of levy and writ of execution on the property in November 2022, Horvath filed this action seeking tort damages for slander of title; cancellation and striking from the public record the notice of levy and writ of execution; a declaration of the parties' rights and duties with respect to the levy; and an order enjoining Brady from encumbering or transferring interest in the property or evicting any occupants. She also applied for a temporary restraining order and preliminary injunction to enjoin a sheriff's sale of the property. The trial court denied the temporary restraining order and scheduled a preliminary injunction hearing. In the interim, Hazari declared bankruptcy, which automatically stayed the property's sale. The trial court ultimately denied Horvath's application for a preliminary injunction for lack of any possible irreparable injury while the stay was in effect in Hazari's bankruptcy proceeding.

## A. BRADY'S ANTI-SLAPP SPECIAL MOTION TO STRIKE

Brady moved to strike the complaint pursuant to Code of Civil Procedure section 425.16 (known as the anti-SLAPP statute, SLAPP being an acronym for "Strategic Lawsuit Against Public Participation"). The trial court granted the motion, ruling that each cause of action arises from Brady's protected activity and Horvath failed to demonstrate a probability of success on the merits. Specifically, the court ruled the litigation privilege (Civ. Code, § 47) barred the slander of title claim and Horvath also failed to allege damages. The court ruled the cancellation of instruments claim failed because Horvath submitted insufficient evidence to show that the notice of levy and writ of execution were void or voidable. The court ruled the declaratory relief claim failed because Horvath had argued it should be treated as one cause of action with the cancellation of instruments cause of action, and also because Horvath failed to establish an actual controversy or allege sufficient evidence to support a judgment in her favor.

3

## B. BRADY'S REQUESTS FOR JUDICIAL NOTICE AND SUBSEQUENT PROCEDURAL HISTORY IN *HAZARI V. BRADY*

We deferred consideration of Brady's two requests for judicial notice with the merits of these appeals. We grant Brady's September 12, 2024 request for judicial notice of the trial court's August 6, 2024 order in *Hazari*). (Evid. Code, §§ 459, subd. (a), 452, subd. (d); see *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 464, fn. 2 [taking judicial notice of superior court judgment entered during pendency of appeal]; *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1593, fn. 1 [taking judicial notice of records in a related case critical to the procedural history of the action].)

The August 6, 2024 order reflects that while those appeals were pending, Brady moved to amend the judgment and attorney fees award in *Hazari* to add Horvath as a judgment debtor. The trial court granted Horvath leave to intervene and oppose Brady's motion. Horvath also petitioned under Code of Civil Procedure section 720.110 for a determination of her third-party ownership claim and an order releasing the property from Brady's notice of levy and writ of execution. The trial court granted Brady's motion and determined that Horvath's ownership claim was not valid. Horvath informs us she has appealed both judgments.

We deny Brady's remaining requests for judicial notice of materials produced in discovery in *Hazari*, and the malpractice complaint filed by Horvath against her former counsel. Those documents were not before the trial court and are not relevant to this appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn.2.)

## II. DISCUSSION

### A. THE ANTI-SLAPP STATUTE

Code of Civil Procedure section 425.16 authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a

public issue." (Code Civ. Proc., § 425.16, subd. (b)(1). Unspecified statutory references are to this Code.) "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 311 (*Wittenberg*).) If the plaintiff cannot make that showing, the trial court must strike the cause of action. (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 522.) We review an order granting or denying an anti-SLAPP motion de novo, and we independently determine whether a cause of action is based on activity protected under the statute (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*)) and, as appropriate, whether the cause of action has minimal merit.

**1. Prong One: Horvath's Declaratory Relief Cause of Action Arises From Protected Activity**

"A defendant satisfies the first prong of the anti-SLAPP analysis by demonstrating that the allegedly injurious conduct falls within one of four categories of protected activity described in Code of Civil Procedure section 425.16, subdivision (e), and that the claim asserted by the plaintiff arises from that conduct. [Citations.] In other words, 'the moving party must establish both (1) that its act constituted protected activity and (2) the opposing party's cause of action *arose* from that protected activity.' " (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).) Section 425.16, subdivision (e), provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

5

proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

To determine whether the "arising from" prong is met, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(1), (2).)  "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' "  (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)  A claim arises from protected activity when that activity underlies or forms the basis for the claim.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77–78 (*City of Cotati*).)  The defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.  (*Ibid*.)

With respect to the first prong, Horvath challenges only the trial court's ruling that her declaratory relief cause of action arises from Brady's protected activity because it "concerns an actual controversy as to whether the levy on the property is invalid." Horvath contends that the declaratory relief claim does not "arise from" but rather was "triggered" by Brady's protected activity, emphasizing that she is seeking only a declaration that Horvath is the rightful owner of the property.  Based on our independent review, we conclude Horvath's declaratory relief cause of action arises from Brady's protected activity.

Horvath relies on *City of Cotati* to argue that Brady's protected activity merely triggered the ownership claim asserted in the complaint.  In *City of Cotati*, the city filed a state court action regarding the validity and enforceability of a local ordinance challenged by mobile home park owners in federal court.  California's Supreme Court ruled that the

6

city's state court action did not "arise from" the federal action, but rather from the parties' underlying controversy regarding the validity and enforceability of the local ordinance at issue in both cases. (*City of Cotati*, *supra*, 29 Cal.4th at pp. 79–80 [noting the city's complaint referred to the validity of the ordinance without reference to the federal action].) Here, there was no pre-existing dispute between Brady and Horvath regarding the property's ownership. Rather, Horvath asserted ownership only after Brady attempted to levy the writ against the property. And but for Brady's attempt to levy the writ, Horvath would have no need to adjudicate her ownership claim against Brady. (See *Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 154 ["Because there is no underlying controversy other than [defendant's] lawsuit," plaintiff's declaratory relief cause of action regarding its contractual duties "arises from protected litigation activity."].)

We also reject Horvath's arguments that her declaratory relief action does not "arise from" Brady's recording of the notice and writ because Hazari had quitclaimed the property to her before Brady obtained an attorney fees award against Hazari. The relevant question here does not concern that purported transfer or its timing, but whether Horvath's action is " '*based on* an act in furtherance of the defendant's right of petition or free speech.' " (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568–1569, disapproved on another ground in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149.)

Horvath's complaint specifically alleges that the "actual controversy" "concern[s] [Brady's] ability to levy upon a property in which [Hazari] has no interest" and that she "seeks a declaration of the rights and duties of the parties with respect to judgment levy on the Property." Horvath also argued in the trial court that her declaratory relief cause of action "seeks resolution of the same issues and the same relief pursued in [her] cause of action for cancellation of instruments" and that because her "request for declaratory relief relies upon the same facts as [her] claim to cancel a written instrument, 'they

7

[should] be treated as one.' " The complaint's allegations and Horvath's trial court arguments all refute her appellate contention that she merely seeks a declaration of her rightful ownership of the property and Brady's levy is not an element of that claim.

Finally, we reject Horvath's assertion that the trial court's order granting Brady's anti-SLAPP special motion to strike leaves her without a remedy. While the appeals in this action have been pending, Horvath unsuccessfully petitioned the trial court in *Hazari* under section 720.110, subdivision (a)[2] for a determination of her third-party ownership claim.

### 2. Prong Two: Horvath Has Not Shown a Probability of Success on the Merits

In the second step of the anti-SLAPP analysis, the burden shifts to Horvath to establish that each claim has " 'minimal merit.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) To satisfy that burden, she " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Ibid*.) Although " 'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Ibid*.) "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater Union High School Dist. v. Gilbane Building Co.*

---

[2] Section 720.110, subdivision (a) provides: "A third person claiming ownership … of property may make a third-party claim under this chapter in any of the following cases if the interest claimed is superior to the creditor's lien on the property: [¶] (a) Where real property has been levied upon under a writ of attachment or a writ of execution." (See also *Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.)

8

(2019) 6 Cal.5th 931, 949; see also § 425.16, subd. (b)(2).) "However, speculative inferences not supported by the evidence proffered need not be considered." (*Monster Energy, supra,* 7 Cal.5th at p. 795.) At this stage, a plaintiff must show that any asserted defenses are inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses. (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 285–286 (*Birkner*).)

As we will explain, based on our independent review, we see no error in the trial court's conclusion that Horvath has failed to demonstrate the merit of each cause of action by establishing a probability of success. (*Wittenberg*, *supra*, 50 Cal.App.5th at p. 311.)

### a. Slander Of Title

"Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner [] 'some special pecuniary loss or damage.' " (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.) Thus "the elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. […] The main thrust of the cause of action is protection from injury to the salability of property [citations], which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value." (*Ibid.*)

In her anti-SLAPP motion briefing, Brady raised the litigation privilege as a defense to be considered in the second prong analysis. (*Birkner, supra,* 156 Cal.App.4th at pp. 285–286.) A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes liability. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 814.) The litigation privilege is codified at Civil Code section 47, subdivision (b): "A privileged publication or broadcast is one made [¶…¶] [i]n any … judicial proceeding." (Civ. Code, § 47, subd. (b).) " 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial

9

proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*).)

The litigation privilege is absolute, applying " 'to *all* publications, irrespective of their maliciousness.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) So long as the communication has " 'some relation to judicial proceedings[,]' " it is " 'absolutely immune from tort liability' by the litigation privilege." (*Rusheen*, *supra*, 37 Cal.4th at p. 1065.) The privilege is not limited to statements made during a trial or similar proceedings. It is well established that it extends to steps taken afterward, including actions taken to collect a judgment, such as obtaining a writ of execution and levying on the judgment debtor's property. (*Id.* at pp. 1062–1064; see also *Albertson v. Raboff* (1956) 46 Cal.2d 375, 379 (*Albertson*) [recording notice of lis pendens absolutely privileged as publication in the course of judicial proceeding]; disapproving statement in *Gudger v. Manton* (1943) 21 Cal.2d 537, 545 (*Gudger*) [that a "levy of a writ of execution is not an act in the course of a judicial proceeding"].)

Citing *Gudger*, Horvath argues that Brady's recording of the notice of levy and writ of execution are not absolutely privileged. Horvath concedes *Albertson* expressly disapproved of *Gudger's* statement on the point (*Albertson*, *supra*, 46 Cal.2d at p. 381), but nonetheless argues Brady's post-judgment enforcement efforts should be analyzed under the conditional common interest privilege created by Civil Code section 47, subdivision (c). While the litigation privilege provides an absolute privilege for communications made in a "judicial proceeding" (Civ. Code, § 47, subd. (b)), and for communications made "in any other official proceeding authorized by law" (*ibid*.), Civil Code section 47, subdivision (c) "provides a qualified privilege for communications made 'without malice, to a person interested therein, … by one who is also

10

interested[,]' … the so-called common interest privilege." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 335–336.)

In *Gudger,* the defendant obtained a judgment against the plaintiff's wife and recorded a writ of execution on her interest in real property, but it had no effect because the plaintiff owned the property separately from his wife. (*Gudger*, *supra*, 21 Cal.2d at p. 542.) The *Gudger* court reasoned that recording the writ against the wife's nonexistent interest in the property was not absolutely privileged because it was "not an act in the course of a judicial proceeding." (*Id* at p. 545.) The *Gudger* court then analyzed whether the levy of execution was conditionally privileged under the common interest privilege of former Civil Code section 47, subdivision (3). (*Ibid.*) That reasoning was expressly rejected in *Albertson*, and *Gudger*'s analysis is no longer good law.

Because we agree with the trial court's conclusion that the litigation privilege applies, Horvath's allegations of bad faith—that Brady had notice of the 2019 quitclaim deed because Hazari produced the deed (along with several thousand pages of other documents) in his litigation against Brady—are irrelevant. There is no "illegality" or "bad faith" exception to the absolute litigation privilege. (*Weeden, supra,* 70 Cal.App.5th at p. 289.)

The trial court also ruled that Horvath's slander of title cause of action failed because she did not allege any damages. Because Horvath's briefing does not present any reasoned argument under an appropriate argument heading challenging this determination, she has forfeited her challenge to the trial court's determination. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 657.)

### b. Cancellation of Instruments

Civil Code section 3412 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." To prevail on a claim to cancel an

instrument, a plaintiff must prove that the instrument is void or voidable, and show " 'a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position.' " (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193–1194.)  Although the trial court did not elaborate on its reasoning, we agree that Horvath has failed to show a probability of success on this cause of action.  (See *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573 [trial court decision correct on any theory applicable to the case will be affirmed regardless of the correctness of the grounds on which it was based].)

The trial court and parties did not address whether the notice of levy and writ of execution are "written instrument[s]" subject to cancellation under section 3412.  (We invited supplemental briefing on the issue.) Courts have long recognized that the term "instrument" as used in the Civil Code "nowhere embraces the case of a writ of any kind issued by a court, or officer, or any other authority." (*Hoag v. Howard* (1880) 55 Cal. 564, 566.)  (See *Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 622; *Foorman v. Wallace* (1888) 75 Cal. 552, 555 ["A writ of attachment, an execution, or other writ is not" an instrument, but "simply the mandate of the law commanding something to be done, or not to be done"]; *People v. Fraser* (1913) 23 Cal.App. 82, 84–85 ["notice of *lis pendens* is not an instrument in the sense contemplated by our statutes; … neither an attachment nor a judgment is an instrument within the meaning of section 1107 of the Civil Code."[3])

We are not persuaded by Horvath's circular argument that the writ of execution here is an "instrument" subject to cancellation because it clouds her title to the property and Civil Code section 3412 is intended to equitably adjudicate instruments that cloud

---

[3]  Civil Code section 1107 provides:  "Every grant of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or incumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded."

title.  We also reject her contention that more recent precedent such as *Weeden* shows the definition of an "instrument" in the context of Civil Code Section 3412 includes a notice of levy and writ of execution.  But *Weeden* did not consider whether a writ of execution is subject to cancellation under Civil Code section 3412.  Without addressing the seminal authorities *Hoag* and *Foorman*, the *Weeden* court concluded that the litigation privilege did not bar a claim to cancel an allegedly fraudulent abstract of judgment.  (*Weeden*, *supra*, 70 Cal.App.5th at p. 292; see *People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 ["it is axiomatic that cases are not authority for propositions not considered"].)  And even if *Weeden* could be interpreted as implicitly departing from *Hoag* and *Foorman*, we are neither obligated nor permitted to do so.  "Although the California Supreme Court is free to overrule its own prior decisions, the doctrine of stare decisis compels lower court tribunals to follow the Supreme Court whatever reason the intermediate tribunals might have for not wishing to do so.  [Citations.]  There is no exception for Supreme Court cases of ancient vintage." (*Mehr v. Superior Court* (1983) 139 Cal.App.3d 1044, 1048, fn. 3.)

### c.  Declarative Relief

An anti-SLAPP motion will lie against a complaint for declaratory relief. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 665–666.)  To obtain declaratory relief under Code of Civil Procedure section 1060, Horvath must demonstrate that her action is a proper subject for declaratory relief, and presents an actual controversy involving justiciable questions relating to her rights or obligations.  (§ 1060; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909.)

In support of her declaratory relief claim, Horvath cites her agreements with Hazari and the purported 2019 property transfer to Horvath.  (See *Weeden, supra,* 70 Cal.App.5th at p. 293 [cancellation of written instrument, quiet title and declaratory relief comprised single cause of action]; *Tiedje v. Aluminum Taper Milling Co.* (1956)

13

46 Cal.2d 450, 452 [treating claims for declaratory relief, quiet title and voiding illegal stock sale as single cause of action].)

We reject Horvath's argument that those allegations and arguments establish a prima facie case for declaratory relief. Horvath's allegations regarding her agreements with Hazari and the purported property transfer do not establish an "actual controversy" regarding the validity of Brady's notice of levy and writ of execution, nor do they support a judgment in Horvath's favor. Neither that evidence, nor her arguments that the 2019 quitclaim deed is entitled to a presumption of full legal title under Evidence Code section 662, directly concern the levy or writ, much less suggest they are invalid. Further, Horvath's failure to establish a probability of success on the cancellation of instruments cause of action, which we have previously discussed, precludes a probability of success on her declaratory relief claim. Without the cancellation of instruments cause of action, there is no present controversy upon which the trial court could declare the parties' rights and obligations with respect to the notice of levy and writ of execution. (Accord *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173 [because declaratory relief is an equitable remedy, not a cause of action, demurrer was properly sustained to declaratory relief claims wholly derivative of nonviable causes of action].)

## B. NO ABUSE OF DISCRETION IN DENYING PRELIMINARY INJUNCTION

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. […] ¶ The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support the injunction. … A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678.) We review the trial court's

14

determination for abuse of discretion. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408–409.)

The trial court denied Horvath's request for a preliminary injunction after finding "there is no possibility of irreparable injury at this point in light of the fact that the sale of the property by the Sheriff has been stayed by the Automatic Stay emanating from the Bankruptcy proceeding filed by Cyrus Hazari." We recognize that real property is viewed as unique and not readily interchangeable for purposes of analyzing the potential for irreparable injury. But we agree with the trial court's conclusion that Horvath could not suffer any irreparable injury while the sale of the property was indefinitely stayed by Hazari's bankruptcy proceeding. Given that circumstance, the trial court was not required to further examine whether Horvath could establish the merits of her claim. We see no abuse of discretion in determining that the "mix" of potential-merit and interim-harm weighed against granting a preliminary injunction.

## III. DISPOSITION

The orders granting Brady's special motion to strike and denying Horvath's application for a preliminary injunction are affirmed. Brady is awarded her reasonable costs on appeal by operation of California Rules of Court, rule 8.278(a).

15

 

                                 _____

                                 Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H051571, H051574
*Horvath v. Brady*